UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTWAN TAMON MIMS,

                    Plaintiff,                         Case No. 1:24-cv-1289

v.                                                     Honorable Ray Kent

MATT MACAULEY et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court
has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C.
§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all
matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1,
PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation
Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.
§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial
review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,
1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).
Service of the complaint on the named defendants is of particular significance in defining a
putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless
notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*,

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC officials: Warden Matt Macauley, Lieutenant Unknown Rambrot, Hearing Investigator Unknown Novak, Grievance Coordinator N. Brooke, and Assistant Deputy Warden Unknown Jones. (Compl., ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on March 13, 2024, Defendant Rambrot "reviewed [Plaintiff] on a misconduct [charge], [and Rambrot] found [Plaintiff] guilty of 'violation of posted rules,' which is a class III misconduct [charge]."[2] (*Id.*, PageID.3.) Defendant Rambrot "gave [Plaintiff] thirty days' loss of privileges."[3] (*Id.*) Plaintiff alleges that he told Defendant Rambrot that "policy states [Rambrot] can't give [Plaintiff] more than twenty days for any class III misconducts." (*Id.*) In response, Defendant Rambrot told Plaintiff to send a kite to the hearing investigator. (*Id.*) Plaintiff submitted this kite, and in response, Defendant Novak upheld the imposed sanctions and told Plaintiff "to write a grievance." (*Id.*) Pursuant to Defendant Novak's instructions, Plaintiff filed a grievance about the matter. (*Id.*) Plaintiff also submitted kites about the matter to Defendant Jones "to no avail." (*Id.*)

---

[2] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

[3] Pursuant to MDOC policy, "all of the following privileges will be lost by a prisoner as a result of a 'loss of privileges' sanction:"

> A. Day room, activity room, TV room, study room, or other designated area where similar activities occur[;] B. Exercise facilities, such as yard, gym, and weight room/pit[;] C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy[;] D. Out of cell hobbycraft activities[;] E. Kitchen area, including microwave, ice machine, and hot water dispenser[;] F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards")[;] G. Movies[;] H. Music practice; musical instruments[;] I. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities," except as approved by Warden or designee[;] J. Telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney[;] K. Visiting[, t]his applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report[; and] L. Use of kiosk (e.g., to send/receive electronic messages or retrieve account information).

MDOC Policy Directive 03.03.105, Att. E (eff. Apr. 18, 2022).

Plaintiff claims that during the thirty days' loss of privileges, he "was wrongfully punished, imprisoned, and mentally and verbally degraded at some point by all names and parties involved in this unfortunate matter." (*Id.*) Plaintiff also claims that "the grievance coordinator, the deputy warden, and the warden all approved of and signed off on several times." (*Id.*) Plaintiff alleges that "the very open act of staff and administrative corruption . . . allowed the unjust and excessive sanction to stand and by not correcting it cause[d] [Plaintiff] to be without access to any mail or contact with [his] attorney or even pictures from [his] wife and children" during the thirty-day period. (*Id.*, PageID.4.) Plaintiff also alleges that he was held "against [his] permission and will from 4-4-24 until 4-15-24," and during this time, he was "held in [his] room and denied any of [his] rights or privileges." (*Id.*) Further, Plaintiff alleges that he is "diabetic and this has caused [him] serious physical harm and health problems." (*Id.*)

After setting forth his factual allegations, Plaintiff then lists the following issues: abuse of authority; staff corruption; false imprisonment; mental and emotional anguish and distrust; inhumane treatment; and cruel and unusual punishment. (*Id.*) Based on Plaintiff's allegations in the complaint, the Court construes Plaintiff's complaint to raise the following claims pursuant to 42 U.S.C. § 1983: Fourteenth Amendment due process and equal protection claims; Eighth Amendment claims; First Amendment claims regarding access to mail; claims regarding violation of MDOC policy; and civil conspiracy claims. The Court also construes Plaintiff's complaint to raise false imprisonment claims under federal and state law.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Macauley, Brooke, and Jones

As to Defendants Macauley, Brooke, and Jones, Plaintiff presents the following allegations against these Defendants: Plaintiff submitted kites about his thirty days' loss of privileges to

Defendant Jones "to no avail"; and "the grievance coordinator [(Brooke)], the deputy warden [(Jones)], and the warden [(Macauley)] all approved of and signed off on several times." (Compl., ECF No. 1, PageID.3.)

As an initial matter, courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, any intended procedural due process claim regarding Plaintiff's use of the grievance procedure and Defendants' responses to his grievances or kites will be dismissed.

Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). And, government officials, such as Defendants Macauley, Brooke, and Jones, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory

liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899;

*Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*,

995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Macauley, Brooke, and

Jones encouraged or condoned the conduct of their subordinates, or authorized, approved, or

knowingly acquiesced in the conduct. Plaintiff alleges in a conclusory manner that he sent kites to

these Defendants and that they "all approved of and signed off on several times"; however, such

conclusory allegations of supervisory responsibility are insufficient to show that these Defendants

were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*,

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for this reason alone, Plaintiff fails to state a claim Defendants Macauley,

Brooke, and Jones upon which relief may be granted.[4]

---

[4] Even setting this issue aside and addressing the merits of Plaintiff's claims, Plaintiff's action against Defendants Macauley, Brooke, and Jones would still be dismissed for failure to state a claim for all of the reasons set forth herein. *See infra* Sections II.B–G.

**B.      Fourteenth Amendment Claims**

**1.      Due Process Clause Claims**

The Court first construes Plaintiff's complaint to raise Fourteenth Amendment procedural and substantive due process claims regarding his receipt of thirty days' loss of privileges. (*See* Compl., ECF No. 1, PageID.3–4.)

**a.      Procedural Due Process Claims**

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As an initial matter, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Further, the United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225.

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a

9

deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250.

Here, Plaintiff does not allege that he was placed in segregation; instead, he alleges that he received thirty days' loss of privileges, a less severe punishment than segregation in the MDOC disciplinary scheme. If confinement in segregation for thirty days does not implicate a protected liberty interest, it follows that any loss of privileges that Plaintiff incurred as a result of his misconduct conviction did not implicate such an interest. *Cf. Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs); *Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[ ] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))). And, Plaintiff fails to allege any facts to show that the thirty-day period in which he lost privileges constituted an atypical and significant deprivation.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding his receipt of thirty days' loss of privileges.

### b.    Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim regarding his receipt of thirty days' loss of privileges, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff claims that pursuant to MDOC policy, he cannot receive "more than twenty days[' loss of privileges] for any class III misconducts," but he received thirty days' loss of privileges. (Compl., ECF No. 1, PageID.3.) Plaintiff further claims that "the very open act of staff and administrative corruption . . . allowed the unjust and excessive sanction to stand . . . ." (*Id.*, PageID.4.)

Although Plaintiff claims in a conclusory manner that there was "staff and administrative corruption," Plaintiff fails to allege any facts to support or explain this assertion. And, the facts alleged in the complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental

11

power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### 2.    Equal Protection Clause Claims

The Court also construes Plaintiff's complaint to raise an equal protection claim regarding his receipt of thirty days' loss of privileges, which he claims is more than the permitted twenty days that may be imposed for class III misconduct convictions. (Compl., ECF No. 1, PageID.3.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any *facts* to show that others who were similarly situated were treated differently. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations

fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly show that the others were similarly situated in all relevant respects.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### C.    Eighth Amendment Claims

Additionally, the Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding his receipt of thirty days' loss of privileges. (*See* Compl., ECF No. 1, PageID.3–4.)

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

In order for a prisoner to state an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The

13

deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Courts have held that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). And, the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Furthermore, a plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

Here, Plaintiff does not allege that he was in segregation; instead, he alleges only that he was not permitted certain privileges during the thirty-day loss of privileges sanction period. Without providing any further explanation or facts, Plaintiff alleges in a conclusory that he is "diabetic and this has caused [him] serious physical harm and health problems." (Compl., ECF No. 1, PageID.4.) Although not specifically articulated by Plaintiff, it appears that Plaintiff intended to claim that his placement on thirty days' loss of privileges "caused [him] serious physical harm and health problems" due to his diabetes. (*Id.*) Plaintiff does not explain how the

14

alleged "physical harm and health problems" occurred; however, regardless, even assuming, without deciding, that these allegations satisfy the objective component of the relevant two-prong test, Plaintiff fails to allege any facts to show that Defendants had any involvement in, or knowledge of, Plaintiff's diabetes and the issues he allegedly faced related to his diabetes while on loss of privileges. Plaintiff also fails to show that Defendants knew of any other substantial risk of harm to him, let alone that they knew of this risk and disregarded it.

Accordingly, Plaintiff's Eighth Amendment claims against Defendants will be dismissed for failure to state a claim.

### D.    First Amendment Claims Regarding Access to Mail

Plaintiff claims that during the thirty-day period in which he was on loss of privileges, he was "without access to any mail or contact with [his] attorney or even pictures from [his] wife and children . . . ." (Compl., ECF No. 1, PageID.4.) For the reasons set forth below, any intended claims regarding Plaintiff's lack of access to "mail" and "contact" with his attorney will be dismissed for failure to state a claim.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

As an initial matter, Plaintiff's allegation regarding his lack of access to mail is vague and conclusory; Plaintiff does not allege any facts about the type of mail that he did not receive in the

thirty-day period—was it physical mail, electronic mail, or both? Plaintiff's allegations regarding his lack of contact with his attorney are also vague and conclusory—was he denied mail from his attorney, in-person visits from his attorney, telephone calls from his attorney, or all of these?[5] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Here, Plaintiff appears to ask the Court to fabricate plausibility to his claim from mere ambiguity; but, ambiguity does not support a claim.

Moreover, Plaintiff fails to allege any facts showing that any individual, let alone any Defendant, was involved in denying him mail and contact with his attorney during the thirty-day period at issue. Although Plaintiff alleges that Defendant Rambrot "gave [Plaintiff] thirty days' loss of privileges" as a sanction for his misconduct conviction, and that Defendant Novak subsequently upheld the sanction, Plaintiff does not allege that any Defendants were involved in the day-to-day implementation of the sanction. (Compl., ECF No. 1, PageID.3.)

Inmates who receive the "loss of privileges" sanction are not permitted among other things, "[u]se of [the] kiosk (e.g., to send/receive electronic messages or retrieve account information)," but there is no restriction placed on the physical mail that a prisoner may receive from family members or attorneys. MDOC Policy Directive 03.03.105, Att. E (eff. Apr. 18, 2022). Such a restriction on one type of mail that a prisoner may receive (i.e., electronic mail) does not prevent a prisoner from receiving other mail (i.e., physical mail), and therefore, the prisoner retains his

---

[5] It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments, and this right can encompass the right to communicate with the prisoner's attorney. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). Here, Plaintiff fails to allege any facts showing any lost remedy in any underlying action.

First Amendment right to send and receive mail during the "loss of privileges" sanction period. The prisoner may not be able to use his preferred method of mail, but he is not prevented from sending and receiving mail in another format. Therefore, the mere imposition of the "loss of privileges" sanction did not violate Plaintiff's First Amendment rights as related to receiving and sending mail.

To the extent that when the "loss of privileges" sanction was implemented, the non-party officers who were involved in the day-to-day implementation of the sanction also denied Plaintiff his physical mail—meaning that Plaintiff was not permitted to receive physical and electronic mail during the relevant period—Plaintiff does not allege that any Defendants were involved in, or had any knowledge of, this day-to-day implementation of the sanction. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And, under the circumstances alleged in the complaint, Plaintiff fails to show that any Defendants were involved in the day-to-day implementation of the "loss of privileges" sanction. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Therefore, Plaintiff fails to show that Defendants were involved in, or had any knowledge of, any alleged denial of all of Plaintiff's mail and contact with his attorney during the thirty-day sanction period. And, as discussed above, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.

Accordingly, for all of these reasons, Plaintiff fails to state a claim upon which relief may be granted against Defendants regarding the alleged denial of his mail and lack of contact with his attorney during the thirty-day period in which he was on loss of privileges.

### E.    Section 1983 Claims Regarding Violation of MDOC Policy

Plaintiff alleges that "[MDOC] policy states" that Plaintiff cannot receive "more than twenty days[' loss of privileges] for any class III misconducts," but that Plaintiff received thirty days' loss of privileges. (Compl., ECF No. 1, PageID.3.) The Court construes this allegation to raise a claim under § 1983 that Defendants violated MDOC policy.

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's § 1983 claims regarding the violation of MDOC policy will be dismissed.

F.    **Section 1983 Civil Conspiracy Claims**

Although not specifically articulated by Plaintiff, out of an abundance of caution, the Court construes *pro se* Plaintiff's complaint to raise a § 1983 civil conspiracy claim. (*See, e.g.*, Compl., ECF No. 1, PageID.4 (claiming "abuse of authority: and "staff corruption").)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff references "staff corruption" and "abuse of power," claiming that "the very open act of staff and administrative corruption . . . allowed the unjust and excessive sanction to stand and by not correcting it . . . ." (Compl., ECF No. 1, PageID.4.) However, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has

19

recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege any facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

###    G.    False Imprisonment Claims

When listing the issues that Plaintiff intended to raise in this action, Plaintiff lists "false imprisonment." (Compl., ECF No. 1, PageID.4.)

To the extent that Plaintiff intended to bring a "false imprisonment claim" pursuant to § 1983, he fails to state such a claim. Plaintiff does not allege that his incarceration itself is unlawful (i.e., Plaintiff does not allege that his incarceration with the MDOC constitutes an unlawful seizure); he only takes issue with the "extra" ten days' loss of privileges he received during his otherwise lawful incarceration with the MDOC. *See Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1160–61 (6th Cir. 2021) (clarifying that "the Fourth Amendment does not adopt separate bans on 'false arrests,' 'false imprisonments,' and 'malicious prosecutions[;]' [i]t establishes a singular ban on 'unreasonable' 'seizures'" (citation omitted)).

Under Michigan law, "[t]he elements of false imprisonment are [1] an act committed with the intention of confining another, [2] the act directly or indirectly results in such confinement, and [3] the person confined is conscious of his confinement." *Moore v. City of Detroit*, 652 N.W.2d 688, 691 (Mich. Ct. App. 2002) (citation omitted). However, the confinement "must be 'false,' i.e., without right or authority to do so." *Tumbarella v. Kroger Co.*, 271 N.W.2d 284, 287 (Mich. Ct. App. 1978) (citation omitted). Here, although Plaintiff appears to believe that his receipt of thirty days' loss of privileges meant that he was "falsely imprisoned" for the extra ten days beyond the permitted twenty-day sanction, he alleges no facts to suggest that he is unlawfully incarcerated

by the MDOC. That is, although Plaintiff believed the sanction he received was improper, Plaintiff does not allege that the MDOC is without authority to incarcerate him generally; he simply disagreed the extra ten-day sanction he received during his lawful incarceration. Plaintiff's disagreement with the extra ten-day sanction does not support a false imprisonment claim.

Accordingly, for the reasons set forth above, any intended false imprisonment claims will be dismissed for failure to state a claim.

### <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 12, 2025                          /s/ Ray Kent
                                                    Ray Kent
                                                    United States Magistrate Judge

21